# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1760 | DATE | 8/25/2003 |
| CASE TITLE | Starr vs. International Brotherhood | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth on the attached order, the Court denies Hill's motion to dismiss for lack of personal jurisdiction (13-1). Hill's motion to strike the declaration of Thomas O'Reilly (39-1) is denied as moot, as the Court has not considered the matters in that affidavit allegedly stated without proper foundation or that constitute inadmissible hearsay. Hill is ordered to answer the complaint on or before 9/8/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 2 7 2003 | |
| | Notified counsel by telephone. | | date docketed | 41 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR6 | courtroom deputy's initials | 03 AUG 26 PM 1:22 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

WILLIAM STARR; THOMAS O'REILLY; )
JOE WALKER; JOSEPH O'BOYLE; )
GARY GILES; DANIEL FITZMAURICE; )
and KELLY FAGAN, )
)
                    Plaintiffs, )
)
vs. ) Case No. 03 C 1760
)
INTERNATIONAL BROTHERHOOD )
OF ELECTRICAL WORKERS, )
INTERNATIONAL UNION; )
LAWRENCE CURLEY; EDWIN HILL; )
and ROBERT JOYCE, )
)
                    Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs filed this action seeking an injunction to restore William Starr as President of Local 15 of the International Brotherhood of Electrical Workers, as well as damages for various alleged injuries. They allege that the defendants removed Starr as Local 15 president for personal and political reasons and that this violated Starr's and the other plaintiffs' rights under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411 & 529 (2000).

Defendant Edwin Hill, the International President of the IBEW, has moved to dismiss the claims against him for lack of personal jurisdiction. Hill contends that the requisite minimum contacts with the state of Illinois do not exist and that even if they do, he is protected from the exercise of jurisdiction here by the fiduciary shield doctrine. For the reasons discussed below,



the Court denies Hill's motion.

## Background

Starr was elected President of Local 15 (which is based on Chicago) in 1995 and was re-elected in 1998 and 2001. Hill, who lives and works in the Washington, D.C. area, has served as the IBEW's International President since January 2001. Defendant Lawrence ("Pat") Curley, who lives in Illinois, is the International Vice President for the Sixth District of the IBEW, which is based in the Chicago area.

In June 2001, Starr organized a strike at Midwest Generation, Inc., which was approved by Curley. In the summer of 2001, MGI proposed a new contract to end the strike. Starr did not approve of the proposal. He alleges that Curley urged him to accept the offer and schedule a Local 15 vote. Starr and several Local 15 representatives then enlisted the support of Reverend Jesse Jackson, Sr., who held a conference with representatives from Local 15 and IBEW International on September 21, 2001. Starr and Curley attended in person, while Hill participated by phone. At the meeting, according to the complaint, Jackson criticized the IBEW International officers for not supporting Starr.

After the conference, plaintiffs contend, Curley called Starr to his office and told him to schedule a vote on MGI's contract proposal. Starr protested, and Curley responded by telling Starr that he was fired. The following day, Hill and Curley called Starr and retracted the dismissal. Plaintiffs allege that Hill then asked Starr if he would like to resign. Starr declined and remained in office, at least for the time being.

Plaintiffs allege that the IBEW International, Hill, and Curley ordered an audit of Local 15's finances, even though an audit had been conducted earlier in the year. Plaintiffs allege that

2

the audit was initiated as a pretext to ultimately remove Starr from office. On October 22, 2001, by letter, Curley formally requested the authority from Hill to initiate the audit of Local 15 records. Hill authorized the audit, by facsimile to Curley, on November 2, 2001. Plaintiffs contend that during the audit, neither the auditing firm nor IBEW International asked Starr to explain anything in Local 15's records. On February 15, 2002, the final audit report was issued, but, plaintiffs allege, they were not allowed to see it.

Following the audit, Curley requested authority from Hill to remove Starr from his position. On March 7, 2002, Hill granted Curley that authority. On March 8, 2002, Curley sent Starr a letter dismissing him from his office. Curley's letter invoked Hill's authority to remove a local official for a failure to "observe or carry out instructions or decisions of the [International President]." Cplt., p. 9 (quoting Article IV, Section 3(j), of the IBEW Constitution). Plaintiffs allege that the letter did not specifically identify any inappropriate practices or violations, but instead stated only generally that Starr was being removed for a failure to keep financial records and disburse funds according to Local 15 bylaws and the IBEW constitution. Following Starr's removal, IBEW International appointed defendant Robert Joyce, a resident of Illinois and then vice president of Local 15, as the new President.

## Discussion

When a defendant challenges a court's right to exercise personal jurisdiction over him, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Steel Warehouse v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The plaintiff "need only make out a prima facie case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *Tobin for*

3

*Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001)). In determining whether jurisdiction exists, the court may consider the pleadings as well as any affidavits and documents submitted by the parties. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). If these materials reveal factual disputes, those disputes are to be resolved in favor of the plaintiff. *Nelson v. Park Industrial, Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

This Court may exercise personal jurisdiction over Hill only if an Illinois court could do so. Fed. R. Civ. P. 4(k)(1)(A). Under the Illinois long-arm statute, personal jurisdiction exists under a number of enumerated circumstances, as well as on any basis permitted by the Illinois and United States Constitutions. 735 ILCS 5/2-209(a) & (c). Because each enumerated basis must meet federal due process requirements in order for jurisdiction to be proper, and the Illinois Supreme Court has not identified any "operative difference" between federal and state due process requirements, these analyses collapse into one– that of the Fourteenth Amendment's due process limitations. *Hyatt*, 302 F.3d at 715-16 (citing *RAR*, 107 F.3d at 1276).

Due process permits the exercise of personal jurisdiction by a forum state over non-residents only when the defendant has had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Application of this standard depends upon whether a plaintiff asserts "general" or "specific" jurisdiction. *RAR*, 107 F.3d at 1277. General jurisdiction exists where the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Specific jurisdiction exists when the cause of action arises "out of or related to the defendant's contacts

4

with the forum." *Id.* at 414 n.8. For specific jurisdiction, we must analyze whether the defendant has "'purposefully established minimum contacts with the forum State' and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances." *RAR*, 107 F.3d at 1277 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). To find that jurisdiction exists, we must determine that the defendant "should reasonably anticipate being haled into court [in the forum state]," based on his contacts with the forum state. *Id.* at 1277 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Starr argues that general jurisdiction exists because Hill, as the chief officer of an international organization with members in Illinois, has general and continuous contacts with Illinois. This argument is unpersuasive. Though he has a fiduciary relationship with the IBEW members in Illinois, Hill's contacts with this state are not sufficient to establish general jurisdiction. Hill does not live in Illinois and has never owned property here. More importantly, plaintiffs have not demonstrated the frequency or regularity of Hill's business in and trips to Illinois. Rather, they have specifically identified only those contacts with Local 15 preceding the present cause of action. As a result, plaintiffs have failed to demonstrate that Hill's contacts rise to a "continuous and systematic" level.

We turn, therefore, to the question of specific jurisdiction. Plaintiffs assert that Hill oversaw (from Washington) the conduct of the Local 15 strike at MGI; he participated by telephone in the conference held in Chicago between Local 15 representatives and Reverend Jackson to discuss the dispute between Local 15's officers and the International; he called Starr to retract his termination by Curley; he participated in organizing, and authorized, the audit of Local

5

15 supposedly initiated as a pretext to terminate Starr; and he authorized Curley to remove Starr from his position. None of these contacts involve Hill's physical presence in Illinois with regard to the matters underlying plaintiffs' claims. But where, as in Hill's case, "a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990) (citing *McGowen v. Woodsmall Benefit Serv.*, 197 Ill.App.3d 400, 405-06, 554 N.E.2d 704, 707 (1990)).

Hill's contacts with Local 15 reflect the purposefulness generally needed to establish specific jurisdiction. *See Burger King,* 471 U.S. at 476-78 (holding that specific jurisdiction may exist even in the absence of physical contacts in a forum state, but only if the defendant's efforts are "purposefully directed" toward residents of that state). Hill participated in and supported the MGI strike, as demonstrated by his letter appealing to AFL-CIO affiliates and facsimile authorizing Local 15 to solicit financial contributions. After Hill's support waned, Hill is claimed to have participated voluntarily in the Jackson meeting, retracted Curley's initial firing of Starr, and directly authorized the Local 15 audit and removal of Starr. Accordingly, because Hill's contacts were purposefully directed toward Illinois residents, he could "reasonably anticipate being haled into court" in Illinois. *RAR*, 107 F.3d at 1277 (quoting *World-Wide Volkswagen,* 444 U.S. at 297).

Hill argues that Starr's claim arises not from telephone calls made during 2001, but from his removal from office. He essentially takes the position that the Court should consider only the authorization for Curley to remove Starr in determining whether the requisite contacts exist. Hill thus raises the question of "how to separate those contacts that a suit 'arises out of' or 'relates to'

from those contacts entirely unconnected to a suit." *Id.* The Court disagrees with Hill's contention that the prior contacts should not be considered. "To be relevant for personal jurisdiction, ... past contacts involving the forum state should ... bear on the substantive legal dispute between the parties." *Id.* (citing *Rush v. Savchuk*, 444 U.S. 320, 329 (1980)). Plaintiffs allege that political and personal conflicts between Starr and Hill (as well as Curley) were the true reason for Starr's removal. Hill's earlier contacts with Illinois directly involve the development of those conflicts and thus are properly considered for jurisdictional purposes.

Finally, Hill argues that he "cannot and should not reasonably anticipate being haled into court anywhere that his decisions have allegedly caused harm to any union member." Dfdt. Reply at 6. The Court acknowledges Hill's concern. It is quite foreseeable that Hill's actions as International President could lead to alleged harm wherever IBEW members are located. "Yet foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process clause." *World-Wide Volkswagen*, 444 U.S. at 295. But in this case, there is more to it than mere foreseeability. Rather, as concluded above, the contention that Hill purposefully reached out to Illinois and his alleged direct involvement in the matters underlying claims make proper this Court's exercise of jurisdiction over him. Equally important, the facts in this case do not suggest that requiring Hill to defend against this action in Illinois would be so burdensome as to "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).

Hill next contends that even if sufficient contacts with Illinois exist, he is protected by the fiduciary shield doctrine from the use of those contacts to establish personal jurisdiction. The fiduciary shield doctrine, adopted by the Illinois Supreme Court in *Rollins v. Ellwood*, 141 Ill.2d

7

244, 565 N.E.2d 1302 (1990), holds that contacts by an individual on behalf of an employer or other principal, i.e., in a representative capacity, are not sufficient to establish jurisdiction over the individual for a claim filed against him personally. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994). The rationale for the doctrine is that it would be "unfair and unreasonable ... to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins*, 141 Ill.2d at 280, 565 N.E.2d at 1318.

Application of the fiduciary shield doctrine has two generally recognized exceptions, both of which are relevant to this case: "(1) the shield is removed if the individual's personal interests motivated his actions, and (2) the shield generally does not apply when the individual's actions are discretionary." *Netzky v. Fiedler*, No. 00 C 4652, 2001 WL 521396, at *1 (N.D. Ill. May 9, 2001) (quoting *Jones v. Sabis Educational Systems, Inc.*, 52 F. Supp. 2d, 1143, 1147 (N.D. Ill. 2001)). *See also Rice*, 38 F.3d at 912 (noting that the fiduciary shield is withdrawn "if the agent was acting also or instead on his own behalf"); *Brujis v. Shaw*, 876 F. Supp. 975, 979 (N.D. Ill. 1995) (noting that "all the courts that have examined the discretion issue have held that the exercise of discretion removes the defendant from the fiduciary shield's protections").

Regarding the personal interest exception, plaintiffs allege that Hill removed Starr as Local 15 president for personal and political reasons. Hill counters that he acted in a good faith and on behalf of IBEW International, and he argues that plaintiffs may not rely on unsupported allegations. First, it must be noted that personal interests "need not be pecuniary." *Rice*, 38 F.3d at 912. Second, the omission of support beyond the pleadings for the alleged interests is not fatal. As noted in *Rice*, "such an omission is not critical in a regime of notice pleading, even

8

with respect to jurisdictional allegations." *Id.* at 914. Furthermore, whether personal interests formed the basis of Starr's removal comprises the central factual issue of the action, and a matter on which plaintiffs have not yet had the opportunity to take significant discovery. With regard to the discretion exception, Hill is the International President of the IBEW, and he purports to have the authority to remove local officers and to delegate that authority to others. In sum, because plaintiffs allege that Hill acted to advance personal interests and that his acts were discretionary, the fiduciary shield doctrine does not apply.

## Conclusion

For the reasons stated above, the Court denies Hill's motion to dismiss for lack of personal jurisdiction [docket # 13-1]. Hill's motion to strike the declaration of Thomas O'Reilly [docket # 39-1] is denied as moot, as the Court has not considered the matters in that affidavit allegedly stated without proper foundation or that constitute inadmissible hearsay. Hill is ordered to answer the complaint on or before September 8, 2003.

MATTHEW F. KENNELLY
United States District Judge

Date: August 25, 2003

9