Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1760 | DATE | 12/15/2003 |
| CASE TITLE | Starr vs. International Brotherhood | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendants' motion for summary judgment (48-1), 51-1) is granted as to Count 4 and 5 and is otherwise denied. The Court's Memorandum Opinion and Order issued on 12/1/03, published at 2003 WL 22844408, is vacated. The defendant's motion for reconsideration is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 17 2003 | |
| | Notified counsel by telephone. | | date docketed | 68 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| OR | courtroom deputy's initials | 03 DEC 16 AM 4:10 Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS **DOCKETED**
EASTERN DIVISION

**DEC 1 7 2003**

| | | |
|---|---|---|
| WILLIAM STARR, THOMAS O'REILLY, JOE WALKER, JOSEPH O'BOYLE, GARY GILES DANIEL FITZMAURICE and KELLY FAGAN, <br><br> Plaintiffs, <br><br> vs. <br><br> INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, INTERNATIONAL UNION, LAWRENCE CURLEY, AND EDWIN HILL, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 03 C 1760 |

## AMENDED
### MEMORANDUM OPINION AND ORDER*

MATTHEW F. KENNELLY, District Judge:

Plaintiffs William Starr, Thomas O'Reilly, Joe Walker, Joseph O'Boyle, Gary Giles, Daniel Fitzmaurice, and Kelly Fagan have sued the International Brotherhood of Electrical Workers, its President Edwin Hill, and Sixth District International Vice President Lawrence Curley for claims arising from the removal of Starr in March 2002 from his elected position as President of IBEW Local 15 and the removal of O'Reilly, Walker, and O'Boyle as appointed staff members of the Local following Starr's ouster. All of the plaintiffs are IBEW members; their primary claim is that their right to free speech protected by federal labor law was impaired

---

* This Amended Memorandum Opinion and Order is issued following the filing of the defendants' Motion for Reconsideration of certain rulings made in the Court's Memorandum Opinion and Order issued on December 1, 2003, which is published at 2003 WL 22844408. The Court has also taken the opportunity to elaborate on an evidentiary issue implicit in our December 1 ruling that was more specifically addressed in our ruling on a later-filed motion *in limine*.

68

by the Union's actions. They filed a seven count complaint against the IBEW, Hill, and Curley (another defendant, Robert Joyce, was voluntarily dismissed by the plaintiffs). The Court previously dismissed Counts 1, 3, and 7 for failure to state a claim upon which relief may be granted. The case is set for trial on December 15, 2003. Defendants have moved for summary judgment on the remaining claims.

1.   **Count 2**

The plaintiffs claim in Count 2 that the defendants deprived them of their right to free speech in violation of 29 U.S.C. § 411(a)(2) by removing Starr, O'Reilly, Walker, and O'Boyle from leadership positions in Local 15 because they had complained that the defendants had not done enough to support the Local's strike against Midwest Generation in the summer of 2001 and because they had disagreed with the defendants on when a ratification vote on a contract offer by Midwest should be held. The defendants counter that Starr was removed because an audit of Local 15's finances uncovered substantial financial improprieties, and that O'Reilly, Walker, and O'Boyle were removed because the new president (Starr's replacement) had a right to choose his own staff. The reason why Starr was removed is a question of fact reserved for determination by a jury. But the defendants argue that even if the plaintiffs were removed because of their stance on the Midwest strike, the defendants are entitled to summary judgment. They make three arguments for why Starr's removal did not violate § 411(a)(2), and they argue that the other plaintiffs' removal did not violate the statute because they were appointed staff who the new president could replace at will. For the following reasons, the Court denies the defendants' motion for summary judgment.

First, the defendants argue that even if Starr was fired in connection with the Midwest

2

strike, it was for unprotected conduct – refusal to hold a ratification vote when Curley suggested he do so – not protected speech – advocating a continuation of the strike. There are circumstances when a union may remove a local official for failing to follow orders, *see, e.g., Newman v. Local 1101, Communications Workers of America,* 570 F.2d 439, 445 (2d Cir. 1978) ("Although a person is free as a union member to criticize mercilessly his union's management and its policies, once he accepts a union position obligating him fairly to explain or carry out the union's policies or programs, he may not engage in conduct inconsistent with these duties without risking removal as an official or employee . . . on the ground that his conduct precludes his effective representation of the union."), but there can be a fine line between protected speech and unprotected conduct. The Court need not draw that line today. The plaintiffs have offered evidence supporting their claim that Starr was fired not because of expressive "conduct," but because of his pure speech. As just one example, they present Curley's deposition testimony that he never gave Starr a direct order to hold a ratification vote immediately, thus Starr strictly speaking did not disobey an order. *See* Curley Dep. at 45. On summary judgment, the Court must evaluate the evidence in the light most favorable to the non-movant. Doing so, the Court concludes that a reasonable jury could find that Starr was removed because he had criticized the International's lack of support for the strike and vocalized his disagreement with Curley on the appropriate timing for a ratification vote.

Second, the defendants argue that even if Starr was removed for his speech, they did not violate § 411(a)(2) because he had run afoul of a reasonable rule restricting free speech. The provision in the Labor Management Reporting and Disclosure Act giving members the right of free speech conditions it by stating that "nothing herein shall be construed to impair the right of a

3

labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." *Id.* § 411(a)(2) The defendants argue that Article XV, section 12 of the IBEW constitution is one such reasonable rule. This provision states that

> [t]he [international president], or his representative, has the power at any time to enter any situation or controversy involving a [local union] or any of its members, and the decision of the [international president], direct or through his representative, shall be accepted by the [local union] and its officers, subject to appeal to the [International Executive Committee] and [International Convention].

The defendants state that Curley "intervened" in Local 15's strike at Midwest under this provision and encouraged Starr to hold a ratification vote on the employer's proposal, but Starr refused. They argue that his conduct violated section 12. This is essentially the same argument that the Court just rejected – that Starr could be removed for his conduct. Even if we assume that section 12 places a reasonable limitation on union members, the defendants have failed to argue that Starr's pure speech – and not just his expressive conduct – could be sanctioned under section 12. Because a reasonable jury could find that Starr was removed because of his speech rather than his conduct, section Article XV, section 12 of the IBEW constitution did not necessarily authorize his removal.

Third, the defendants argue that they are entitled to summary judgment because Starr cannot show that his speech was the cause of his removal. The plaintiffs have responded with circumstantial evidence supporting their theory of the case. Because a jury reasonably could infer from this evidence that Starr and his staff were removed because of their speech, a genuine issue of fact exists as to causation, and summary judgment is inappropriate.

4

Finally, the defendants argue that the plaintiffs cannot show that the removal of Starr's staff from appointed positions violated § 411(a)(2) because an incoming elected official is allowed to remove the appointees of his predecessor so that he has his own staff. Although § 411(a)(2) prohibits the removal of an *elected* union official for his speech, *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 355 (1989), it does not prohibit a local president from removing *appointed* officials of his predecessor who opposed his election. *Finnegan v. Leu*, 456 U.S. 431, 439 (1982). In *Finnegan*, the Supreme Court explained that the purpose of the LMRDA is to foster intra-union democracy, and "the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election." *Id.* at 441. In contrast, allowing the removal of an elected official because of his speech would contravene the will of the union electorate. *Lynn*, 488 U.S. at 355.

In this case, a local president appointed by the International seeks the power to remove the appointed staff of his elected predecessor. The defendants argue that under *Finnegan*, an *unelected* union president, such as Joyce, can remove his elected predecessor's appointed staff. The Court notes that *Finnegan*'s rationale for allowing an *elected* official to appoint a new staff – "ensuring a union administration's responsiveness to the mandate of the union election" – seems substantially weaker when an *unelected* official wishes to appoint a new staff because an unelected official cannot claim to have an election mandate. But the Court need not determine as a general matter whether *Finnegan* applies to the removal of appointed officials regardless of whether they are removed by an elected or unelected union official. Even if we assume that *Finnegan* permits an unelected official to fire the appointed staff of his predecessor, the

defendants are not entitled to summary judgment on O'Reilly, Walker and O'Boyle's claims.

Though the Supreme Court recognized in *Finnegan* that the LMRDA "does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own," it also suggested that a union official could not remove staff "as 'part of a purposeful and deliberate attempt . . . to suppress dissent within the union.'" *Finnegan,* 456 U.S. at 441 (citation omitted). The defendants recognize that *Finnegan* does not apply when appointed officials are removed "'as part of a purposeful and deliberate attempt to suppress dissent within the union.'" Def.'s Mot. at 11 (quoting *Brunt v. Service Employees Int'l Union,* 284 F.3d 715, 720 (7th Cir. 2002)). The plaintiffs argue that Joyce removed O'Reilly, Walker and O'Boyle as part of the International's campaign to suppress those who opposed Curley's position on the Midwest strike. The Court finds that the plaintiffs have raised a genuine issue of fact as to whether they were removed "as part of a purposeful and deliberate attempt to suppress dissent within the union."

The fact that Joyce was unelected by itself is not reason to deny summary judgment for the defendants. However, the fact that the person who sought to remove the staff of his elected predecessor was appointed by the International rather than elected by the local membership is a factor relevant to determining whether O'Reilly, Walker and O'Boyle were removed as part of a campaign to suppress dissent. Because Starr claims he was removed from his elected office because of his dissenting views, the removal of Starr's staff – who purportedly shared his views – by the person chosen by the International to replace him raises the specter that the removal of Starr's staff was part of a deliberate campaign to suppress dissent within the union. To support their argument that Joyce could fire Starr's staff, the defendants rely on *Harvey v. Hollenback,* 113 F.3d 639 (6th Cir. 1997); *Bloom v. General Truck Drivers, Office, Food & Warehouse Union,*

6

*Local 952*, 783 F.2d 1356 (9th Cir. 1986); and *Cehaich v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 710 F.2d 234 (6th Cir. 1983). But none of those cases involve claims by an elected president *and* several members of his staff that they were removed from office as part of a single campaign to suppress dissent.

The plaintiffs have provided evidence that Joyce fired O'Reilly because he did not think "O'Reilly could work within the new organization," Joyce Dep. at 46, O'Boyle because "he would not be loyal to this organization, that he was a Bill Starr guy and he would only want to work for Bill," *id.* at 99, and Walker because he wouldn't be "part of his team." Dahlberg Dep. at 126. Joyce also testified at his deposition that he told O'Reilly that he was firing him at the recommendation of the International, Joyce Dep. at 56, and minutes from Local 15 meetings record statements that the staff changes had been at the direction of the International. A reasonable jury could find that Joyce removed O'Reilly and the others to finish what the Union had started with Starr's removal, namely suppressing those who supported the Midwest strike and were opposed to the International's stance regarding the strike. The Court notes that a reasonable jury could also find that Joyce removed Starr's staff simply because he wanted a staff loyal to him – the rationale for removal of appointed officials condoned by *Finnegan*. But the possibility of alternative reasonable interpretations of the evidence means that a genuine issue of fact exists.

The defendants argue that even if Joyce fired O'Reilly and the others to suppress dissent, they cannot be held liable for Joyce's actions. They state that Joyce's statements that he was acting at the behest of the International are inadmissible hearsay that cannot be used to establish agency because "'the existence of an agency relationship depends on the words or actions of the

7

principal [and] the fact of agency cannot be proved by statements of the agent.'" Def.'s Reply at 10 (quoting *Prudential Ins. Co. v. Curt Bullock Builders, Inc.*, 626 F. Supp. 159, 165-66 (N.D. Ill. 1985)). The defendants' reliance on *Prudential* is misplaced. The decision relies in part on Illinois agency law, which is not controlling on questions of admissibility under the Federal Rules. Second, it relies on earlier cases indicating that the threshold showing of agency for purposes of admissibility of a statement under Rule 801(d)(2)(D) must come from evidence other than the statement. Such evidence exists here; the defendants themselves have consistently maintained that IBEW Const., art. XV, § 12 requires the local president to do what the International tells him to do. But such independent evidence is likely no longer required to show agency for purposes of Rule 801(d)(2)(D); the Supreme Court rejected the "independent evidence" requirement in the related context of co-conspirator declarations (Rule 801(d)(2)(E)) in *Bourjaily v. United States*, 483 U.S. 171 (1987), and assuming such a requirement once existed under Rule 801(d)(2)(D), it likely did not survive *Bourjaily*. *See, e.g., United States v. Richards*, 204 F.3d 177, 202 (5th Cir. 2000); *DCS Sanitation Mgmt., Inc. v. Occupational Safety & Health Review Comm'n*, 82 F.3d 812, 815 (8th Cir. 1996). Thus, Joyce's statements are admissible at trial under Rule 801(d)(2)(D), and the defendants can be held liable for his decision to remove O'Reilly, Walker, and O'Boyle if he did so as part of a campaign to suppress speech in the union local. Accordingly, the Court denies the defendants' motion for summary judgment on Count 2.

2. **Count 6**

Starr and O'Reilly claim they were defamed and portrayed in a false light when a representative of the International made statements at several Local 15 meetings implying that

8

they had been removed for misappropriating funds and breaking the law. The defendants argue they are entitled to summary judgment on this claim because the plaintiffs must show actual malice to recover and cannot do so.

The defendants argue that the plaintiffs must show the statements were made with actual malice because (1) the statements were made at membership meetings and, thus, were privileged; and (2) Starr and O'Reilly were public figures. In *Sullivan v. Conway*, 157 F.3d 1092, 1098 (7th Cir. 1998), the Seventh Circuit found that statements involving a union's internal affairs were privileged when made during nonpublic meetings and disseminated to the rank and file through newsletters. But the court noted the privilege would be defeated if the speaker had made an unflattering statement that he did not believe to be true or had been indifferent to whether it was true or false. *Id.* A reasonable jury could conclude that the audit of Local 15 and the resulting report were commissioned as a pretext for removing Starr, and, therefore, the jury could find that when James Dahlberg, an International representative assigned to Local 15 after Starr's removal, made statements at union meetings that Starr and O'Reilly had been removed for misappropriation of funds, he did so with reckless disregard for the content and veracity of the report. For these reasons, the Court denies the defendants' motion for summary judgment on Count 6.

3.  **Count 4**

In Count 4, the plaintiffs allege that Article IV, section 3(j), the IBEW constitutional provision under which Starr was supposedly removed from Local 15's presidency, violates 29 U.S.C. § 411(a)(1) & (2). In relevant part, section 3(j) allows the International president to remove a local officer

for incompetence, or for nonperformance of duties, or for failure to carry out the provisions of this Constitution and the rules herein, or the bylaws and agreements of the [local union] or System Council, or for putting into effect or allowing to be put into effect any practice, rule, agreement, by law or policy not having the approval of the [International president], or for failure to observe or carry out instructions or decisions of the [International president].

Although this provision on its face does not prohibit activity clearly protected by § 411(a)(1) or (2) of the LMRDA, the Court could enjoin its enforcement if the union "repeatedly utilizes [it] to harass or infringe upon its members' exercise of their protected rights of free speech, without making an attempt to limit the section to avoid conflict with the LMRDA." *Semancik v. United Mine Workers of America Dist. 5*, 466 F.2d 144, 152 (3d Cir. 1972). But the plaintiffs have failed to show that the IBEW has used the provision repeatedly in a prohibited manner. Absent such evidence, this Court cannot find the provision to violate the LMRDA.

4. **Count 5**

In Count 5, the plaintiffs allege that the defendants placed Local 15 under a *de facto* trusteeship in violation of the procedural requirements of 29 U.S.C. § 464. The defendants argue that even if a trusteeship was imposed without complying with §464, the plaintiffs' claim is moot because they admit the IBEW has not exercised oversight over Local 15 for several months. The most recent evidence provided by the plaintiffs of the alleged oversight by the International is the testimony of Local 15's replacement president that up until a few months before his September 30, 2003 deposition, Local 15 had been sending its time sheets to the district office to make sure the staff was filling them out correctly. Joyce Dep. at 130-31. Assuming, without deciding, that his testimony is evidence of the existence of a *de facto* trusteeship, Joyce's testimony suggests that the trusteeship effectively came to an end a few

months before September 2003. In a case similar to this one, the Seventh Circuit held that once a trusteeship is terminated, all claims challenging the propriety of the trusteeship become moot. *Air Line Stewards and Stewardesses Ass'n Local 550 v. Transport Workers Union of America*, 334 F.2d 805, 807-08 (7th Cir. 1964); *see also, Stevens v. Northwest Indiana Dist. Council, United Brotherhood of Carpenters*, 20 F.3d 720, 726 (7th Cir. 1994) (finding challenge to trusteeship "should have been dismissed for want of standing" because "any trusteeship that once existed terminated before th[e] suit was filed."). The plaintiffs argue their claim is not moot because the effects of the improper trusteeship – the removal of Starr and his staff – linger. But in *Air Line Stewards,* the Seventh Circuit rejected that argument, reasoning that "[the president's] removal did not perpetuate the trusteeship indefinitely nor did the termination depend upon [the president] being restored to the presidency." *Air Line Stewards*, 334 F.2d at 808. The plaintiffs can challenge their removal under Count 2 of their complaint; the Court grants summary judgment to defendants on Count 5 based on that claim's mootness.

## Conclusion

For the reasons stated above, defendants' motion for summary judgment [docket # 48-1, 51-1] is granted as to Counts 4 and 5 and is otherwise denied. The Court's Memorandum Opinion and Order issued on December 1, 2003, published at 2003 WL 22844408, is vacated. The defendants' Motion for Reconsideration is denied.

*[signature]*
MATTHEW F. KENNELLY
United States District Judge

Date: December 15, 2003